UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAFAYE GASKINS, | : CIVIL ACTION NO. 3:CV-03-2341 |
| Plaintiff | : (Judge Nealon) |
| v. | : FILED SCRANTON |
| MARVA CERULLO, et al., | : NOV 0 4 2005 |
| Defendants | : PER _____ DEPUTY CLERK |

## MEMORANDUM AND ORDER

### BACKGROUND

Lafaye Gaskins ("Gaskins"), an inmate confined in the Mahanoy State Correctional Institution, Frackville, Pennsylvania ("SCI-Mahanoy"), filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983. He claims that the named defendants have been deliberately indifferent to his medical treatment for folliculitis, in that they refuse to provide him with an electric razor. Named as Defendants in the complaint are Marva Cerullo, Corrections Health Care Administrator; Edward J. Klem, SCI-Mahanoy Superintendent; Edward R. Martin, SCI-Mahanoy Superintendent's Assistant; and Thomas L. James, former Chief Grievance Coordinator for the Department of Corrections.

Presently before the court is Defendants' motion for summary judgment. (Doc. 55). The motion it fully briefed, and is ripe for disposition. For the reasons that follow, the motion will be granted.

**Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514,

United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at

trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**Statement of Facts**

On or about May 3, 1990, Gaskins was committed to the custody of SCI-Mahanoy. He suffers from folliculitis, (also known as "razor bumps"), a fairly common problem among African American males. On January 28, 1995, a permanent medical order was issued by Dr. Young for an electric razor for Gaskins' condition. (Doc. 60, p. 126).

On November 25, 1998, Dr. Lester L. Lewis, the Medical Director for the Bureau of Health Care Services, issued the following Memorandum regarding electric razors:

> I have been asked to review requests for electric razors that are granted by staff within the institutions. The intent of this process is to minimize the use of electric razors because of the alternative uses that inmates find for them (tattoos). The use of an electric razor for the treatment of pseudofollicultitis is at times recommended for those individuals who wish to shave. It should be noted that the only effective management for PFB is cessation of shaving.
>
> Shaving is a cosmetic activity. To my knowledge, there is no medical indication to shave unless there is an infestation or a skin infection that may require exposure of the skin. I repeat, shaving is not a necessity. It is not appropriate for referrals to arrive at central office because of a lack of comfort in notifying inmates of a change in practice. I expect every inmate request that reaches central office to be accompanied by the physician's note

4

> indicating the medical need to: 1) shave and 2) specifically use an electric shaver.
>
> A medical necessity is not created because an inmate used to have an electric shaver. I expect each Medical Director to research treatment of PFB and make informed decisions based on medical necessity, not inmate wishes. I have included a basic guideline for the management of PFB according to the U.S. Navy. As noted, the actual treatment is NOT to shave. I have also included for your interest an article about court cases where the right to **not** shave has been upheld by the courts. Isn't it interesting that our population has a request that is opposite from groups in the free world.

(Doc. 60, November 25, 1998, Memorandum).

In response to the Medical Director's November 25, 1998 Memorandum, on January 29, 1999, the Department of Corrections' Deputy Secretary for Administration issued the following Memorandum to all Superintendents:

> Recently, Dr. Lewis issued a medical opinion to the Corrections Health Care Administrators and Medical Directors, regarding electric razors. Essentially, Dr. Lewis stated that there is no medical reasons for approving electric razors. The medical staff have been issued protocols for the proper treatment of inmates with Pseudofolliculitis Barbae and "razor bumps."
>
> The health care vendors have been instructed to cease approving electric razors for inmates. The one institution that is selling electric razors in the Commissary (You know who you are) should cease dong so immediately.
>
> Through attrition, we expect to eliminate all electric razors from the system. In order to do this, the following should occur:

5

> 1. No new electric razors should be authorized for outside purchase. Any medical orders for electric razors should be forwarded to Dr. Maue for review.
>
> 2. Any time an inmate's property is packed (for transfer, for RHU/SMU placement, for ATA, etc.), the electric razor should be confiscated and the attached notice should be issued to the affected inmate by the Property Officer.
>
> There is no need to confiscate electric razors during routine or special cell searches. As long as the inmate is using his electric razor for its intended purpose, he may retain it. However, in the event he is transferred (see #2 above), it will be confiscated. As electric razors become inoperable through normal wear and tear, they will not be replaced.

(Doc. 60, January 29, 1999, Memorandum).

On January 8, 2003, Gaskins wrote to the Director of the Bureau of Health Care Services for the Department of Corrections, requesting authorization to purchase a new razor pursuant to his medical order allowing him an electric razor for his medical condition. (Doc. 1, Ex. D). In a letter dated January 21, 2003, Gaskins was informed that he could obtain an electric razor if the doctor at his institution determined it to be a "medical necessity." (Doc. 1, Ex. E). Once it is established to be a medical necessity, it must be approved by the Bureau of Health Care Services at the Department's Central Office in Camp Hill. Id.

6

On January 31, 2003, Gaskins filed a Grievance No. 42934, claiming that he had a "permanent order" from Dr. Young allowing him to have an electric razor for his skin condition. (Doc. 71, Ex. 1). On February 7, 2003, Defendant Cerullo responded with the following:

> Since 1995, policy regarding electric razors has changed dramatically. Here are some facts about the policy as it now stands:
>
> 1. Electric razors must be ordered by the institutional Medical Director based upon medical need. This then must go to the Bureau of Health Care Services Medical Director for final approval.
>
> 2. Electric razors issue prior to this policy, which need to be replaced will not be reordered unless the above process is followed.
>
> 3. Inmates admitted to RHU or transferring to another facility will have their electric razor confiscated and the process listed in #1 will be initiated.
>
> It is obvious to me that PA DOC des not want electric razors in inmate population and the Bureau of Health Care has advised that really there is no clinical indication for electric razors. Inmates with skin conditions should be encouraged to let their beards grow and have them trimmed by the barber. This is the only way true healing will take place.
>
> SCI Mahanoy medical staff have not refused to seek approval from the Bureau of Health Care; rather, they have said an electric razor is not needed.

7

(Doc. 71, Ex. 2). On February 14, 2003, Gaskins filed an appeal to the Superintendent and then a final appeal to the Chief Grievance Coordinator. (Doc. 71, Exs. 3, 4). On March 10, 2003, the Chief Grievance Coordinator informed Gaskins that a decision on his final review would be delayed as the Chief Grievance Coordinator was referring Gaskins' record to the Bureau of Health Care Services for review. (Doc. 71, Ex. 4). On April 14, 2003, the Chief Grievance Coordinator denied Gaskins' appeal to final review, finding the following:

> Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. I find the issues raised for final review have been addressed by the Grievance Coordinator and the Superintendent, and their responses are reasonable and appropriate. The Bureau of Health Care Services had reviewed your case and finds no medical reason to allow an electric razor for you.

(Doc. 1, Ex. F).

On December 22, 2003, Gaskins filed the instant action in which he claims that "Defendants have ignored their own regulations and ignored the serious medical needs of plaintiff, in violation of plaintiff's constitutional rights under the eighth amendment." (Doc. 1, p. 4). Specifically, he states that his Eighth Amendment rights were violated by Defendants "when they denied plaintiff his doctor recommended razor/prescription for

his disease folliculitis." Id. For relief, Gaskins seeks compensatory and punitive damages. Id.

**Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which requires him to demonstrate that: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state law. Gorman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir.1995).

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)(citing Estelle vs. Gamble, 429 U.S. 97 (1976)). In order to establish a claim under § 1983 based on the Eighth Amendment, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective element) to (2) plaintiff's serious medical needs (the objective element). Monmouth County Correctional Institution Inmates vs. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir.

1979). Because only egregious acts or omissions can violate this standard, mere medical malpractice can not result in an Eighth Amendment violation, nor can disagreements over a prison physician's medical judgment. White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990).

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106, (1976). "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "Allegations of medical malpractice are not sufficient to establish a Constitutional violation." Spruill, 372 F.3d at 235. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Spruill, 372 F.3d at 235; Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

The objective component of an Eighth Amendment claim, i.e., whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency. Hudson v. McMillian, 503 U.S. 1 (1992). A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991); Monmouth County Correctional Institution

11

Inmates v. Lanzaro, 834 F.2d at 347; Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); West v. Keve, 571 F.2d 158, 162-63 n.6 (3d Cir. 1978). The serious medical need element contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain. See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d at 347; Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977). Not every injury or illness invokes constitutional protection -- only those that are serious have that effect. Additionally, a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment from the prison's medical staff. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

A review of the documentation submitted by the Defendants reveals that the Plaintiff was seen and treated for his folliculitis. He was provided with an electric razor in 1995, which was the acceptable protocol at that time for the treatment of folliculitis. However, in the years that Gaskins possessed his electric razor, both DOC policy and the medical community's treatment regarding folliculitis changed. In 1999[1], the DOC

---

1. In opposition to Defendants' motion for summary judgment, Gaskins submits the affidavits of eight other inmates who suffer from folliculitis and have received

determined that the possession of electric razors posed a threat to security and the medical community determined that shaving is not a medical necessity, and that inmates with skin conditions should be encouraged to let their beards grow and have them trimmed by the barber.

At best, Gaskins' complaint amounts to a subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. However, a mere disagreement as to the proper medical treatment for an inmate's medical condition can not serve as a predicate to liability under § 1983. Hudson v. Palmer, 468 U.S. 517 (1984); Wheeler v. Beard, 2005 WL 1840159, p. 12 (E.D. Pa.)(holding that plaintiff's disagreement with prison medical personnel over how best to ameliorate his shaving-induced skin condition is not a basis for constitutional relief). Plaintiff's civil rights complaint fails to articulate an arguable claim under § 1983 and Defendants are entitled to judgment as a matter of law. See White, 897 F.2d at 108-110.

An appropriate Order is attached.

                                                                                            */s/*
                                                        **United States District Judge**

Dated: November 4, 2005

---

medical orders for electric razors. (Doc. 71). The Court notes that all the medical orders allowing these inmates electric razors pre-date the 1999 change in policy. Thus, these affidavits offer no support for Plaintiff's claim.

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAFAYE GASKINS, | : CIVIL ACTION NO. 3:CV-03-2341 |
| Plaintiff | : (Judge Nealon) |
| v. | : |
| MARVA CERULLO, et al., | : |
| Defendants | : |

ORDER

**AND NOW,** this 4th day of November, 2005, for the reasons set forth in the accompanying Memorandum of this date, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for summary judgment (Doc. 55) is **GRANTED**. Judgment is hereby entered in favor of the Defendants and against the Plaintiff.

2. Plaintiff's motion to strike Defendants' brief in support of their motion for summary judgment for counsel's failure to sign the certificate of service (Doc. 65) is **DENIED**.

3. Defendants' motion for enlargement of time to deem their certificate of service timely signed and counsel's entry of appearance timely filed on behalf of Defendants, (Doc. 68) is **GRANTED**.

4. The Clerk of Court is directed to **CLOSE** this case.

5. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

*[signature]*
United States District Judge